UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff,*<br>v.<br><br>DANA ANN WILKEY,<br>*Defendant.* | Case No. 1:17-TP-20049-UU-1<br><u>Before Judge Ursula Ungoro</u><br><br>[CAND: 5:14-CR-0318-LHK]<br><br>**MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE (IN CHAMBERS – HEARING WAIVED)** |

**NOW COMES** DANA ANN WILKEY, motioning this Court *in propria persona* to terminate the imposed term of probation, reducing such to a "time already served" duration. This request is made pursuant to 18 U.S.C. §3564(c) and Fed R. Crim. P. 32.1(c)(2)(C). In Chambers Hearing waived per Fed R. Crim. P. 32.1(c)(2)(B).

This document complies with Local Rule 5.1(a), and what follows is a concise memorandum of case history, points of authority, policy and argument to justify the request sought herein.

On October 21, 2016 in the Northern District of California, I was sentenced to 5 years of probation after pleading guilty to one count of Misprision of a Felony, a violation of 18 U.S.C. §4. Dkt. Ent. 1.[1] Part of that term of probation included a 6 month term of home confinement, which I completed in April of 2017. I have now served 4 years and 3 and 1/2 months of my probation term at the time of this filing. The reasons for this Misprision conviction are better understood in ND CA document 142, the sentencing memorandum.

---

[1] All documents pertinent to my case are in my transfer file, docket entry #1 in the FLSD docket associated with this case number. All of my original files can be found in the CAND docket. In that docket, my Judgment order is #144.

Page 1 of 11

1. I would like to request early termination mainly on the basis of what is included in this Motion but also that it is in the best interest of my child who is completing 5th grade in late May 2021. My son has been limited in what he can do, as a result of my travel limitation for more than 6 years taking in consideration the additional time spent under the restriction in pre-supervision. I am my son's only active parent. An example of how this has affected him was last September, I did not get approval in time to go to my son's birthday party in central Florida due to a miscommunication in my request. I had sent an email requesting to go to my Supervising Officer but forgot to attach the required form and my Supervising Officer did not respond or alert this to me. Therefore her approval never came, and I missed my son's birthday party, which at eleven was devastating to him. This was ultimately my fault and my probation officer was very kind to help the situation for me by allowing me to go a few weeks later with him which my parents arranged as a second trip, but still this was very hard on him. He also cannot participate in any impromptu travel of any kind with his friends or relatives to Central Florida or Northern Florida because the process takes three weeks to get approval for me to go with him and these trips require me to go for him to participate. Also, I am hoping to have the ability to start middle school outside of Southern Florida. I believe based on my current circumstances, I warrant what will equate to an approximately six month early release in my case. Therefore, I make this request after learning that it is my right to file a request for early termination on my own behalf.

2. **Jurisdiction**: This Court had and maintains jurisdiction of this case from July of 2014 (when my pretrial phase started), and now during my supervision phase.

3. **Authority**: As cited above, 18 U.S.C. §3564(c) gives judges the authority to terminate terms of probation in federal felony cases after the expiration of one year. In the Federal Rules of Criminal Procedure, rule 32.1(c) states that modifications are made for probation and supervised release cases after a hearing, but that such a hearing is not required if the defendant waives the hearing, the relief sought is favorable to the defendant, or if the government is given the chance to respond (object) and has not done so.

4. As it applied to releasing offenders from supervision, the 11th Circuit has much more to say about supervised release than it does probation. While not perfectly in line, the two types of supervision, and the reasons it is in the "interests of justice" to release either one are rather analogous. Rather than differentiating the two, the following Circuit precedents conflate the justification in terminating supervised release with that of probation-only supervision.

5. A district court may "terminate a term of supervised release and discharge the defendant" if, "after considering the factors set forth in" 18 U.S.C. §3553(a), the court "is satisfied that such action is warranted by the conduct of the defendant released and in the interest of justice." *United States v. Keshishian*, 12-10680 (11th Cir. 2013).

6. The 11th Circuit clarified and partly reversed course on the way District Courts are required to ponder §3583(e) requests in *United States v. Johnson*, 17-12577 (11th Cir. 2017). Whereas in previous unpublished cases like *United States v. Boyd*, 606

F. App'x 953 (11th Cir. 2015)[2] there was no requirement from the Circuit Court that a district judge explain the §3553(a) factors considered while pondering a termination request, the *Johnson* decision makes clear that §3583(e) requests were analogous enough to §3582(c) requests, insofar as they are sentencing reduction decisions, that meaningful appellate review requires some discussion of the relevant statutory consideration factors.

7. Policy on early termination on probation and supervised release can be found both in Monograph 109 for probationary policy,[3] and in the Sentencing Guidelines Manual in §5D1.2. Fundamental to this pleading, the Commission changed this section of the Manual in 2011 to specifically encourage courts to consider early termination of supervised release in "appropriate cases." This case is certainly appropriate for early release.

8. Committee notes to this procedural rule don't spend much time on termination requests, but bring up a defendant's right to present mitigating information when a modification request would be of greater restriction to the defendant. In this case, I both waive the hearing, and request that a decision in this matter be made without such a hearing once the government is given an opportunity to proffer a written objection if it chooses to do so.

9. **Policy**: The Sentencing Guidelines Manual addresses sentences of Probation in §5B1.1-3 wherein a case like mine, which fell in lowest tier of Zone B in the

---

[2] See *Johnson, id.* at 7

[3] *Supervision of Federal Offenders*, (Guide to Judiciary Policy, Vol. 8E, Ch. 3 at 28-29)

sentencing table[4] (U.S.S.G. §5A), have available probationary sentences of 1-5 years of probation with a commensurate term of community or home confinement in lieu of the suggested incarceration term. In my case that was 4-10 months. U.S.S.G. §5B1.2. As comporting with this section, I was given a term of 6 months of home confinement to start my term of probation because, with an adjusted offense level of 9, I was at the low end of Zone B, one point north of Zone A. Probationary policy in regards to recommending early termination in supervised release cases comes from Monograph 109[5]. In tandem with the Sentencing Guidelines Manual notes in §5D1.2, Probation Monograph 109 informs probation officers that they "should consider the suitability of early termination for offenders as soon as they are statutorily eligible."

10. When making this determination, the 9 general criteria for making a recommendation to the court for early termination are found in section §380.10(b):

> *(1) Stable community reintegration;*
> *(2) Progressive strides toward supervision objectives and in compliance with all conditions of supervision;*
> *(3) No aggravated role in the offense of conviction, particularly large drug or fraud offenses;*
> *(4) No history of violence;*
> *(5) No recent arrests or convictions;*
> *(6) No recent evidence of alcohol or drug abuse;*
> *(7) No recent psychiatric episodes;*
> *(8) No identifiable risk to the safety of any identifiable victim; and,*
> *(9) No identifiable risk to public safety based on the Risk Prediction Index."*

---

[4] Adjusted offense level of 9 with a criminal history category of I.

[5] Guide to Judiciary Policy, Volume 8, Part E: Supervision of Federal Offenders (Monograph 109)

11. Later in that same section, it states that "The existence of an outstanding financial penalty *per se* does not adversely affect early termination eligibility as long as the offender has been paying in accordance with the payment plan" (§§c), and failure to meet criteria listed should not automatically exclude an offender from further consideration (§§d), and there is <u>a presumption in favor of recommending early termination</u> for probationers and supervised releasees who have been supervised for at least 18 months and are not violent, drug, sex offenders, terrorists, present a risk to public or victims, and are free from any moderate or higher violations.

12. **<u>Argument:</u>** I have had total success while on probation these last 4 years and 3 and ½ months. I completed my term of 6 months home confinement (including location monitoring) without incident. I have complied with all directions of my supervising probation officer. I've paid my restitution payments on time, every month.

13. While going through this, I have been raising my now-11-year-old son, John, as his sole parent and provider. I receive no child support, although I have an order. Although raising John takes much work (he is the highlight of each day and is a high-achieving honor roll student, see the letter attached). He is no longer going to physical school for safety reasons, but we hope to change this, so he is taking 5th grade on MSO and 6th Grade math on FLVS. I attach a reference letter from my son's 4th grade teacher. I also keep and maintain 30 hours of work with CIC, Common Interest Community, LLC as a consultant and have been there since 2012. In 2020, my consulting hours were lowered, but I managed to get another consulting job to supplement my income working for a parent who is in my son's class part time.

14. I am very active in the PTA at my son's school for 6 years, and I have been his class "Homeroom mom" for 4 years.

15. I also volunteer at the Miami Rescue Mission. I have done 370 hours of voluntary informal and formal service with them (See attached letter), which has included tutoring the men in the homeless shelter on Math and English, running numerous community toy drives, Easter basket drives and school shoe drives for the children. See the attached pictures from my last toy drive and attached letter from the Miami Rescue Mission. I have done a large community toy drive for 7 years. This year due to Covid, I did a drive and drop toy drive (attached pictures). I also am one of their co-captains at most of the Miami Rescue community outreach events, such as Christmas in July, Thanksgiving, Christmas and Easter and at those events I lead a group of volunteers in feeding the homeless. I love volunteering.

16. Regarding the restitution order in my case, I have been faithful with the payments thereto. However, it is mathematically impossible for me to pay the balance of that restitution in the remaining time I have on probation. I pay $200 each month, so it would take me approximately 300 plus more years to completely pay off this balance. This balance is also being paid jointly and severally. I'm on a very tight budget, but I am diligent with it so that I've never been late or missed a payment toward this judgment. Per PSR, Para. 19: "As there is no evidence to suggest that Dana Wilkey participated in the fraudulent schemes between Skylar Phoenix and Lissa Phoenix, she is not responsible for the total loss suffered by BSC. Dana Wilkey was paid a total of $1,096.512.04 from BSC." PSR, Para. 21: "The defendant has agreed to pay $1,149,342 in restitution as part of her plea agreement. Since that time, the defendant has provided documentation of

expenses that she incurred as part of her contract obligation with BSC. For example, she was required to maintain an insurance policy. Based on these expenses, the parties have agreed that she is responsible for $1,047,221.00 in restitution.". I agreed to pay back all monies received by my company for over 8 years of work for the Plaintiff except as stated above which is why the number is so high.

17. It is also of note that I have an excellent FICO score (776 via Experian, attached). This may seem a minor point, but it is certainly indicative that I handled all of my finances throughout pretrial, sentencing, and probation thus far without falling behind on any bills. And I will continue to act this way in perpetuity, as evidenced by this credit rating.

18. To stay in line with sentencing decisions in similar cases with similar defendants, §3553(a)(6) addresses the need to avoid unwarranted disparities between cases with such similarities. In regard to my request here, other cases where early termination requests have been granted are of particular applicable. See *United States v. Folan,* No. 9:15-TP-80032-DMM-1 (FLSD, 2017 release) where Defendant Folan was terminated after serving half of his 5-year term of supervision for his conviction of Mail and Wire Fraud. Even in this very courtroom, defendant Melix Lopez was released from his supervised release term after serving two years in another non-drug related case. See *United States v. Lopez*, No. 1:12-CR-20621-UU-3 (FLSD 2017 release).

19. A look at the Monograph 109 test for the USPO to consider recommendations on requests for early termination of supervised release addresses many of the same issues from §3553, but from a more reintegration related standpoint.

20. The impetus for this request is for my son. My son is finishing elementary school in May of 2021 and is gifted and I want the freedom to leave Southern Florida in the summer and get us established elsewhere. In addition the limitations that come wth Probation are incredibly challenging with the additional pressures of Covid and although not the intention of the punishment my son is being restricted with me.

## CONCLUSION

In considering this request, please observe that the offense period was alleged to be between February 2006 and September 2012, which makes the offense conduct between 9 and 15 years ago. For two years prior to October 21, 2016, I was under pre-trial and post-conviction supervision, performing perfectly, and with lots of equities.

I hope that you will find my situation warrants relief. I have completed my electronic monitoring, have a perfect restitution payment record, and have gladly met every request made of me by my probation officer.

Beside my punishment which has been extreme, the collateral damage incurred from my Misprision has been very difficult to endure including financial devastation, loss of reputation, restricted travel, and civil death; however, I have done my very best to take responsibility for my actions and embrace this punishment with accountability and great respect for the system. I am trying to continue with this effort in this request for the remaining six month term of my supervision to be terminated so I may move with my son in the summer in time for the beginning of middle school and my son and I can finally feel free while still maintaining my restitution payments ongoing.

Respectfully submitted on this 2nd day of February, 2021.

/s/ _____
DANA ANN WILKEY
*Pro Se* Defendant, Movant

Attachments List:
- School reference letter
- Experian FICO credit score
- February 1, 2021 Letter from Miami Rescue Mission
- Toy Drive picture with description from December 2020

January 30, 2021

**From:** Mr. Al Lawrence, 4th Grade Teacher of the Gifted
Miami Beach South Pointe Elementary
Miami, FL. USA, 33139

To Whom it May Concern,

It is with great honor and privilege that I write this recommendation letter for John C. Flynn. I teach the gifted class at Miami Beach South Pointe Elementary School, an A-rated International Baccalaureate School in South Florida. While being his teacher in 4th grade during the school year of 2019-2020, John made a positive impact on everyone in our classroom, including me, his teacher. John has a beautiful mind that would make any teacher love him and want to have him back for another school year. John always had a positive attitude toward learning. His natural leadership and eagerness for learning, and goal-achievement drive was contagious among his classmates and they enjoyed working alongside him in many projects. John never hesitated to ensure that those around him were having a good time while completing class assignments or projects and was always available to help others whenever they needed him.

John is a self-driven student who aims toward innovative ways for learning. He ensured to make the best of his learning and took it upon himself to self-initiate projects that would purposely supplement his academic development and skills. As a result of his experiences in different learning opportunities, John developed outstanding self-reflection skills. For example, he never hesitated to share with me the results of his learning experiences or how he would like to approach a project in the future. These experiences helped him develop an open-minded perspective toward positive criticism from his teacher and peers. This resulted in John being very capable in understanding others' perspectives and opinions that may surface from a specific group work or project.

In my eleven years of teaching, I have met very few students with such natural excitement and eagerness for learning as John has. He has a remarkable above-the-norm critical thinking and academic skills. His interest in many subjects and topics makes him a well-rounded individual. John excels in language skills, mathematics, the sciences and computer/technology skills. His academic work ethic is always present, and he strives to perform at a level that guarantees full achievement at everything he does. For instance, this school year he earned the Principal Honor Roll Award in all four quarters and this demonstrates his excellence and commitment for learning.

Finally, John is very active in extracurricular activities such as being part of the school safety patrol team and he participates in his community and volunteers to help families in need year-round. John's interpersonal skills are excellent, and he can enjoy a good conversation with almost anyone in our school, from talking to his teachers, classmates, the school's administrators, or other parents. John is a great student to have around any day. It is for these and many other reasons that with great privilege I recommend John C. Flynn.

Sincerely,

Al B. Lawrence (alawrence1@dadeschools.net)
4th Grade Teacher of the Gifted
Miami Beach South Pointe Elementary

*[signature]*

1/31/2021 https://usa.experian.com/member/printable-report/experian/now



**Prepared For**
**DANA A. WILKEY**
Personal & confidential
**Date generated:** Jan 31, 2021

## At a glance

FICO® Score 8

**776** FICO
Experian data Jan 31, 2021



300 — 850
Very Good

| Account summary | | Overall credit usage | Debt summary | |
|---|---|---|---|---|
| Open accounts | 3 | | Credit card and credit line debt | $4,387 |
| Self-reported accounts | 0 | | Self-reported account balance | $0 |
| Accounts ever late | 0 | **10 %** | Loan debt | $0 |
| Closed accounts | 8 | | Collections debt | $0 |
| Collections | 0 | | Total debt | $4,387 |
| Average account age | 8 yrs 10 mos | | | |
| Oldest account | 15 yrs 9 mos | | | |

Credit used  $4,387
Credit limit  $43,000



Rev. Ronald Brummitt
*President*

Miami – Hollywood - Pompano

February 1st, 2021

The Honorable Judge Ursula Ungoro
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Dear Judge Ungoro,

I am writing to you on behalf of Dana Wilkey. Thank you for taking the time to read my letter.

Dana is a valued ambassador and volunteer for the Miami Rescue Mission and Broward Outreach Center, a Florida 501(c) (3) non-profit organization. We are a charitable faith-based ministry providing spiritual, physical, and essential services to homeless and impoverished men, women, and children in our community. We provide food, shelter, recovery programs, and transitional housing at our campuses in Miami and Broward.

Dana joined our Volunteer Family in 2014 and since then, she has formally logged over 180 hours at our Education Center where she helped tutor our residents and aided them in overcoming often overlooked and hidden educational deficiencies. She has gone above and beyond for them as it is obvious she cares for them greatly. Whenever we ask her to do something she is there. She has mentored many of the younger men and been a friend to speak to for the older residents at the shelter. She is always smiling and happy no matter what she is going through. In addition to this, she has informally performed over 190 hours of informal services and support for our shelter whether it be serving food at our events, doing gift drives or fund raisers or dropping off donations for herself and many others.

If you have any questions please do not hesitate to contact me at 305-572-2004.

Sincerely,

*Lian Navarro*

**Lian Navarro**

**Sr. Community Development Associate**

Lnavarro@caringplace.org

Miami Rescue Mission - 2010 NW 1st Ave. – Miami, FL 33127 – Tel: (305) 572-2004 – Fax: (305) 572-2005

www.caringplace.org



Case 1:17-tp-20049-JEM   Document 7   Entered on FLSD Docket 02/03/2021   Page 16 of 18

## CERTIFICATE OF SERVICE
## FOR PRO SE DOCUMENTS

I, DANA ANN WILKEY, do hereby certify that I have served a true and correct copy of the following document,

**MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE**

upon the court and the office of the United States Attorney:

| **Noticing AUSA CR TP/SR** | **Clerk of the US District Court** |
|---|---|
| United States Attorney's Office | Southern District of Florida - Miami |
| 99 NE 4th Street | 400 North Miami Avenue |
| Miami, FL 33132 | 8th Floor |
| | Miami, FL 33128-7716 |

by placing it in a sealed, postage prepaid envelope by United States Postal Mail on the **2nd** day of **February**, 2021.

_____
DANA ANN WILKEY
*Pro Se* Movant

Dwilkey
8511 SW 29th St
Miami Fl 33155

Clerk of US District Court
Southern District of Florida - Mic
400 North Miami ave.
8th Fl.
Miami Fl 33128-7716




U.S. POSTAGE PAID
PM 1-Day
MIAMI BEACH, FL
33139
FEB 02 21
AMOUNT
$7.70
R2305E126192-05

